IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONTA VICKERS, | : |
|                 Petitioner, | : |
| v. | :   Civ. Act. No. 19-127-LPS |
| TRUMAN MEARS, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
|                 Respondents. | : |

## MEMORANDUM OPINION

Donta E. Vickers. *Pro Se* Petitioner.

Sean P. Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.

    Attorney for Respondents

March 28, 2022
Wilmington, Delaware

STARK, U.S. Circuit Judge:

## I.   INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Donta E. Vickers ("Petitioner"). (D.I. 1) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 7; D.I. 11) For the reasons discussed, the Court will dismiss the Petition as time-barred under the limitations period prescribed in 28 U.S.C. § 2244.

## II.   BACKGROUND

On June 10, 2014, after "grand jury indictments and a mistrial granted to allow [Petitioner] to explore potentially exculpatory evidence that came to light during a first trial," a Delaware Superior Court jury found Petitioner guilty of second degree assault (as a lesser included offense of first degree assault), attempted first degree robbery, home invasion, second degree conspiracy, and three counts of possession of a firearm during the commission of a felony ("PFDCF"). *Vickers v. State*, 117 A.3d 516, 518 (Del. June 11, 2015). Petitioner's convictions stemmed from a home invasion during which Petitioner shot the victim in the leg. *See State v. Vickers*, 2017 WL 2265104, at *1 (Del. Super. Ct. May 18, 2017). On August 8, 2014, the Superior Court sentenced Petitioner as a habitual offender to life imprisonment for his attempted first degree robbery, home invasion, and PFDCF convictions, ten years of incarceration for his second degree assault conviction, and two years of incarceration for his second degree conspiracy conviction. *See Vickers*, 117 A.3d at 518. On August 20, 2014, the Superior Court filed a corrected sentencing order, to reflect that there would not be an entry of a civil judgment, but left all other terms intact. (D.I. 7 at 3) Petitioner appealed, and the Delaware Supreme Court affirmed his convictions on June 11, 2015. *See Vickers*, 117 A.3d at 521.

On October 13, 2015, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 8-1 at 9, Entry No. 102) The Superior Court appointed counsel to represent Petitioner, who filed an amended Rule 61 motion on Petitioner's behalf on December 14, 2016. (D.I. 8-1 at 10, Entry No. 116) The Superior Court denied the Rule 61 motion on May 19, 2017. *See Vickers*, 2017 WL 2265104, at *4. Petitioner appealed, and the Delaware Supreme Court affirmed that judgment on January 24, 2018. *See Vickers v. State,* 179 A.3d 823 (Table), 2018 WL 559088, at *1 (Del. Jan. 24, 2018).

Petitioner filed the instant Petition in January 2019, asserting two grounds for relief: (1) defense counsel provided ineffective assistance by: (a) failing to admit exculpatory evidence of his innocence; (b) not objecting to the "show up" identification of him as the perpetrator of the crime; and (c) failing to investigate impeachment evidence; and (2) his habitual offender sentence violates due process. (D.I. 1)

## III.  ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

2

> recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling, which, when applicable, may extend the filing period. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may be excused from failing to comply with the limitations period also by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner's § 2254 Petition, filed in 2019, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Given these circumstances, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals to a state court but does not seek certiorari review, his judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day period allowed for seeking certiorari review. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The Delaware Supreme Court affirmed Petitioner's conviction on June 11, 2015, and he did not seek certiorari review by the United States Supreme Court. Consequently, his judgment of conviction became final on September 9, 2015. Applying the one-year limitations period to that date, Petitioner had until September 9, 2016 to timely file his Petition.[1]

---

[1] The Court notes that 2016 was a leap year, consisting of 366 days. Nevertheless, "[e]very federal court that has addressed the issue has concluded that [the] method in [Fed. R. Civ. P. 6], *i.e.*, the

3

Petitioner waited until January 17, 2019[2] to file the instant Petition, approximately two years and four months after the expiration of the limitations period. Therefore, his habeas Petition is untimely unless the limitations period can be statutorily or equitably tolled, or he demonstrates a gateway claim of actual innocence. The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001). In addition, a post-conviction motion that is untimely under state law is not properly filed for § 2244(d)(2) purposes and, therefore, has no statutory tolling effect. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

---

'anniversary' method, for calculating a time period applies to . . . AEDPA's one-year limitation period." *Nunez v. California*, 2014 WL 809206, at *3 n.9 (N.D. Ohio Feb. 25, 2014) (collecting cases); *see also Dennis v. Crow*, 791 F. App'x 775, 776 (10th Cir. Jan. 29, 2020). "Under the 'anniversary' method, the first day of the one-year limitations period is the day after the triggering event, thus giving petitioners 'until the close of business on the anniversary date of . . .' the triggering event to file a federal habeas petition." *Id.* Using the anniversary method in this case (and, essentially, ignoring the leap day), results in September 9, 2016 being the last day of AEDPA's limitations period.

[2]Although the Petition was docketed on January 22, 2019, the Petition and envelope postmark are dated January 17, 2019. Thus, pursuant to the prison mailbox rule, the Court adopts January 17, 2019 as the date of filing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003).

4

Here, thirty-three days of AEDPA's limitations period elapsed before Petitioner filed a Rule 61 motion on October 13, 2015. The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision on January 24, 2018. Consequently, Petitioner's Rule 61 motion tolled the limitations period from October 13, 2015 through January 24, 2018. The limitations clock started to run again on January 25, 2018, and ran the remaining 332 days without interruption until the limitations period expired on December 26, 2018. Thus, even with the applicable statutory tolling, the Petition is time-barred, unless equitable tolling or the actual innocence gateway exception applies.

### B. Equitable Tolling

AEDPA's limitations period may be tolled for equitable reasons in appropriate cases. *See Holland*, 560 U.S. at 645. A petitioner can only qualify for equitable tolling by demonstrating "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing;"[3] mere excusable neglect is insufficient. *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has limited the equitable tolling of AEDPA's limitations period to the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

---

[3]*Holland*, 560 U.S. at 648.

*Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999); *see also Thomas v. Snyder,* 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Petitioner asserts that defense/appellate counsel's failure to inform him about AEDPA's statute of limitations constitutes an extraordinary circumstance for equitable tolling purposes. (D.I. 11 at 2) Petitioner does not provide any support for this assertion and, in any event, "[a]ttorney miscalculation" of a deadline "is simply not sufficient to warrant equitable tolling." *Lawrence v. Florida,* 549 U.S. 327, 336 (2007); *see also Johnson v. Hendricks,* 314 F.3d 159, 163 (3d Cir. 2002) (holding that attorney's mistake in determining date habeas petition is due does not constitute extraordinary circumstances for purposes of equitable tolling). Additionally, to the extent Petitioner's untimely filing of the Petition was due to his own ignorance of the law or the result of his miscalculation regarding the one-year filing period, such factors do not warrant equitable tolling. *See Taylor v. Carroll,* 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

Based on the foregoing, the Court concludes that that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins,* 569 U.S 383, 392 (2013); *Wallace,* 2 F. 4th at 150-151. A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace,* 2 F.4th at 151. Evidence is new for purposes of the actual innocence gateway even if it was available for trial counsel through reasonable diligence, if trial counsel's failure to discover or present it is alleged as ineffective assistance of counsel. *See Reeves v. Fayette SCI,* 897 F.3d

154, 164 (3d Cir. 2018). Neither the Supreme Court nor the Third Circuit has articulated a specific standard for determining whether new innocence-gateway evidence is reliable, but they have provided helpful guideposts. Broadly, three examples of reliable evidence are "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner contends that a May 14, 2014 Gunshot Residue Analysis Report ("GSR Report") constitutes newly discovered evidence not presented at trial that demonstrates his actual innocence, presumably because he interprets the GSR Report as showing there was no gunshot residue on his hands. (D.I. 1 at 13; D.I. 1-1; D.I. 1-2 at 2) Defense counsel was aware of the GSR Report in advance of trial but chose not to introduce the Report, and Claim One's ineffective assistance of counsel allegation is based on defense counsel's failure to introduce the GSR Report during Petitioner's trial. Consequently, the Court finds that the GSR Report constitutes "new" evidence for purposes of the actual innocence gateway. *See Reeves*, 897 F.3d at 164.

Nevertheless, the GSR Report results are inconclusive[4] and, when considered with the other evidence presented at Petitioner's trial, the GSR Report does not show that it is more likely than not

---

[4]For instance, the GSR Report explains (1) "one component particles" were found on Petitioner's hands; (2) "[t]wo component and one component particles are found in GSR but may also originate from other sources;" and (3) "[t]he absence of GSR does not eliminate the possibility that the subject handled or discharged a firearm." (D.I. 1-1 at 4; *see also* D.I. 1-2 at 6) In the Court's view, the fact that the GSR Report results are inconclusive provides a sufficient basis for determining the results do not constitute reliable evidence as contemplated by the first prong of the actual innocence gateway inquiry. The Court finds further support for this conclusion after considering the GSR Report results in connection with the other evidence presented at trial. *See, e.g., Simmons v. Beard*, 590 F.3d 223, 237 (3d Cir. 2009) (in context of *Brady* claim, after noting that inconclusive test results "may be exculpatory even when they do not provide definitive evidence on a particular issue," explaining that court is required to "at least consider the potential effect of this evidence on the jury's verdict in combination with the other *Brady* material").

7

that no reasonable juror would have convicted Petitioner of shooting the victim.[5] *See House v. Bell*, 547 U.S. 518, 538 (2006). As the Superior Court explained when discussing the GSR Report's inconclusive results during Petitioner's Rule 61 proceeding, "[b]oth defense and the prosecutor could have argued the [GSR Report] results supported his respective theory of the case." *See Vickers*, 2017 WL 2265104, at *3. Based on the foregoing, the Court is not persuaded that the GSR Report constitutes reliable evidence of Petitioner's actual innocence under the demanding standard of *McQuiggan* and *Schlup*.

Accordingly, the Court will dismiss the instant Petition as time-barred.[6]

### D. Pending Motion

During the pendency of this proceeding, Petitioner filed a Motion for an Extension of Time to file a Reply to the State's Answer, and subsequently filed his Reply. (D.I. 10; D.I. 11) As a result, the Court will deny the Motion for an Extension of Time as moot. The Court considered Petitioner's contentions in the Reply during its review of the instant Petition.

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A federal court denying a habeas petition on procedural grounds without reaching the underlying constitutional claims is not required to issue a certificate of appealability unless the petitioner

---

[5]The evidence admitted at trial included: (1) Petitioner's admission to police at the time of the arrest that he had been at the crime scene and had handled the gun; (2) the victim testified he recognized the shooter as Petitioner, a former coworker; and (3) Petitioner had been to the victim's house on at least one prior occasion. (D.I. 8-2 at 94, 96-100, 102-103; D.I. 8-5 at 1-2; D.I. 8-19 at 48)

[6]Having determined that the Petition is time-barred, the Court will not address the State's alternate reasons for dismissing the Petition.

demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief because it is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will dismiss the instant Petition as time-barred, and the pending Motion as moot. The Court also declines to issue a certificate of appealability. An appropriate Order will be entered.